## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**RAJESH LALL, M.D.**,

     Plaintiff,

v.                                                          Case No. 8:26-cv-00725-WFJ-NHA

**PROFESSIONALS RESOURCE
NETWORK, INC., BOARDPREP LLC,
LAKELAND REGIONAL
HEALTH SYSTEMS, INC.,
MICHAEL J. SORNA, M.D.,
DEREK ROBBEN, M.D., and
KARMON SEARS, Psy.D.**,

     Defendants.

_____/

## **ORDER**

This cause comes before the Court upon *sua sponte* review. For the reasons set forth below, Plaintiff Rajesh Lall's Amended Complaint, Dkt. 28, is dismissed without prejudice as a shotgun pleading.[1]

## **BACKGROUND[2]**

This action arises out of an employment dispute following Plaintiff's termination by non-party BayCare Health System and Defendant Lakeland Regional

---

[1] The Court notes that this matter has been raised by multiple defendants in their respective motions to dismiss. *See* Dkt. 50 at 13–15; Dkt. 54 at 2. However, the Court addresses this matter *sua sponte*; therefore, this Order does not rule upon those motions.

[2] At this stage, all facts alleged by Plaintiff are taken as true, and the Court recounts the allegations contained in Plaintiff's Amended Complaint. Although Plaintiff references numerous exhibits, it appears that Plaintiff has yet to file such. *See* Dkt. 28 at 210–15.

Health Systems, Inc. ("LRH").[3] *See* Dkt. 28. Plaintiff held clinical privileges as an interventional cardiologist at Bartow Regional Medical Center, Winter Haven Hospital, and BayCare Medical Group, which are affiliated with BayCare Health System, as well as LRH. *Id.* ¶¶ 23–32. Plaintiff's Florida medical license (ME107070) remains active. *Id.* ¶ 1.

Plaintiff asserts that between September 2023, and January 2025, he "repeatedly raised, in writing concerns regarding patient-care safety, governance failures, bylaws noncompliance, conflicts of interest, and Code 15 / sentinel-event reporting at [Bartow Regional Medical Center]." *Id.* ¶¶ 47–48. On January 23, 2025—for reasons not directly provided by Plaintiff—BayCare "terminated Plaintiff's employment effective immediately[.]" *Id.* ¶ 52. However, Plaintiff's clinical privileges were not yet revoked, as the severance process was still being sorted out. *See id.* ¶¶ 52, 54, 57, 58.

On January 24, 2025, BayCare Safety and Security issued a system-wide "Be On the Lookout" alert that labeled Plaintiff an "UNAUTHORIZED PERSON" and instructed personnel to "facilitate a Trespass Warning from the site" if Plaintiff was observed at any BayCare hospital. *Id.* ¶ 53. On January 24, 2025, communications were sent from Plaintiff's email address[4] to various BayCare administrators, *id.* ¶

---

[3] Plaintiff has additionally filed a related lawsuit against BayCare Health System, Inc., among a litany of other defendants, including some that are included in the present action. *See Lall v. BayCare Health System, Inc.*, No. 8:26-cv-890 (M.D. Fla.).

[4] Plaintiff avers that, "[t]hroughout [his] Complaint, where any communication is attributed to Plaintiff in writing, Plaintiff neither admits nor denies authorship. Plaintiff recounts such communications as defendants and the

55, which were later utilized to justify an "adverse action" due to these communications being perceived as a threat. *Id.* ¶¶ 55, 62. On February 20, 2025, a Notice of Complaint was referred to Bartow Regional Medical Center's Well-Being Committee, which described Plaintiff's behavior as "inappropriate and/or disruptive to hospital operations." *Id.* ¶ 63. On February 21, 2025, administrators at Bartow Regional Medical Center contacted the Bartow Police Department to express concern about perceived threatening communications they had received from Plaintiff. *Id.* ¶ 64. When the Bartow Police Department closed its investigation, it found that Plaintiff "did not commit a crime for written threat to kill or injury" and that "[i]t seems the messages were directed towards the BayCare legal system and not towards an individual." *Id.*

On March 2, 2025, Plaintiff was notified that Bartow Regional Medical Center's Well-Being Committee had concluded that he was "an impaired physician" and imposed a precautionary suspension of his clinical privileges, which was conditioned on an evaluation and clearance for reinstatement from Defendant Professionals Resource Network, Inc. ("PRN"). *Id.* ¶ 65. PRN is a "Florida private not-for-profit corporation that, at all times relevant, participated in physician

---

institutional actors characterized them, without conceding the accuracy of those characterizations. Plaintiff further alleges that none of the institutional actors who treated such communications as a predicate for adverse action independently verified the authorship or afforded Plaintiff an opportunity to contextualize or clarify the content." Dkt. 1 ¶ 34(f).

evaluation, monitoring, and referral activities that interface with the Florida Department of Health[.]" *Id.* ¶ 17.

Plaintiff then began the intake process with PRN, which is led by their medical director, Defendant Dr. Michael J. Sorna. *Id.* ¶¶ 69–72, 76. On March 18, 2025, PRN provided Plaintiff with a selection of evaluators to perform an independent medical evaluation, from which Plaintiff chose Defendant Dr. Derek Robben, who is associated with Defendant BoardPrep LLC ("BoardPrep"). *Id.* ¶ 74. BoardPrep is a "Florida limited liability company that provides medical evaluation services, including evaluations performed in connection with PRN referrals and monitoring determinations." *Id.* ¶ 18. On April 3, 2025, Plaintiff completed the independent medical evaluation with Dr. Robben. *Id.* ¶¶ 80, 82–83. Plaintiff then completed neurocognitive testing with Defendant Dr. Karmon Sears on April 19, 2025. *Id.* ¶¶ 86–91.

Plaintiff received written reports from Drs. Robben and Sears on May 7, 2025. *Id.* ¶ 108. The reports both recommended continued treatment, among other measures, *id.* ¶¶ 111, 113, while Dr. Robben specifically recommended a PRN psychiatric monitoring agreement. *Id.* ¶ 111. The stated bases for Dr. Robben's report were his diagnostic impression and "the potential for recurrence of problematic behaviors that could compromise safety." *Id.* ¶ 112. In her report, Dr. Sears mentioned "delusions (religious, paranoid, grandiose) as noted in [Plaintiff's] emails but not expressed during evaluation[,]" *id.* ¶ 114, and that "[a]t this time,

4

without further observation and weekly psychotherapy sessions, I cannot say that he would be safe to return to BayCare Medical Group for those on the MEC or the Wellness Committee." *Id.*

Seemingly dissatisfied with the results, Plaintiff requested a second-opinion evaluation, *id.* ¶ 124, which was later completed by non-party Acumen Assessments. *Id.* ¶¶ 128, 135. On May 14, 2025, the PRN Clinical Team reviewed the results of Dr. Robben's independent medical evaluation and adopted his recommendation of a psychiatric monitoring agreement. *Id.* ¶ 121. A draft of this agreement was transmitted to Plaintiff on May 31, 2025. *Id.* ¶ 132.

On June 30, 2025, Dr. Sorna of PRN communicated to Plaintiff that the second-opinion evaluation of Acumen Assessments yielded diagnoses of delusional disorder (persecutory type) and autism spectrum disorder. *Id.* ¶ 143. Dr. Sorna told Plaintiff that, "[b]ased on this report, I have no choice but to remove you from clinical practice effective immediately. We do not feel it is safe for you to practice." *Id.* ¶ 144. Plaintiff was additionally informed that if he didn't agree to PRN's psychiatric monitoring agreement, that PRN would have to report Plaintiff to the Florida Department of Health ("DOH") for the potential suspension of Plaintiff's license "on the grounds of safety concern." *Id.* ¶ 145.

On June 30, 2025, PRN issued a written notice to Plaintiff to inform him that he had been "refrained from practice," and that the "refrainment will remain in force until lifted by PRN in writing." *Id.* ¶ 146. The notice further stated that this

5

refrainment was being imposed as a "condition of continued impaired practitioner program participation." *Id.* ¶ 147. This notice was transmitted to LRH, who then informed Plaintiff on July 11, 2025, that "[b]ased on this formal notice from PRN, you are not permitted to practice at LRH at this time." *Id.* ¶¶ 176–78.

At this point, Plaintiff began transmitting written communications to PRN describing his intent to pursue legal action for: "tortious interference; defamation and character assassination; abuse and overreach of authority under delegated license; violation of constitutional rights under the First and Fifth Amendments; and violation of civil rights under the Americans with Disabilities Act[.]" *See id.* ¶¶ 150, 151, 154; *see also id.* ¶ 157 (describing a letter entitled "Formal Rebuttal and FINAL Legal Warning — PRN Overreach, Constitutional Violations, and Ethical Misconduct"). Plaintiff specifically sent correspondence to Dr. Sorna demanding that he "cease and desist from any further defamatory diagnosis or mischaracterization," among other demands. *Id.* ¶ 151.

On July 16, 2025, Plaintiff formally rejected PRN's psychiatric monitoring agreement via written communication. *Id.* ¶ 156. Accordingly, on August 7, 2025, PRN issued a letter to Plaintiff stating, "[b]ecause you have declined to enter into an impaired practitioner program contract, PRN has closed your program file and sent it to the Florida Department of Health as required." *Id.* ¶ 158. On August 11, 2025, the DOH issued Plaintiff a Notification of Investigation. *Id.* ¶ 159.

On September 19, 2025, Plaintiff was arrested and charged with unidentified felony offenses, and on October 8, 2025, was subsequently arrested and charged with unidentified misdemeanor offenses. *Id.* ¶ 189. Following these arrests and charges, on December 3, 2025, LRH sent Plaintiff a notice stating, "[p]lease consider this as formal notice of your automatic voluntary resignation from the LRH Medical Staff, effective immediately." *Id.* This notice additionally cited "Section 11.E of the Medical Staff Bylaws," which maintains that "an individual's appointment and clinical privileges shall be automatically relinquished if the individual is arrested, charged, or indicted for any felony[.]" *Id.* ¶ 212. On January 26, 2026, the Board of Directors of LRH informed Plaintiff by letter that it had approved the automatic voluntary resignation. *Id.* ¶ 193.

On March 18, 2026, Plaintiff filed his initial Complaint, initiating the present action. *See* Dkt. 1. On April 10, 2026, the Probable Cause Panel of the Florida Board of Medicine determined that no probable cause of a violation existed on PRN's August 7, 2025, disciplinary referral to the DOH, and on April 15, 2026, the DOH closed the disciplinary file. Dkt. 28 ¶¶ 162, 186. On April 20, 2026, Plaintiff sent PRN's legal counsel a written request for PRN to withdraw the refrainment from practice dated June 30, 2025, but PRN responded the following day that it was "not in a position [to] withdraw" the refrainment. *Id.* ¶¶ 163–64.

On May 18, 2026, Plaintiff filed the operative Amended Complaint, alleging: breach of contract against Defendant LRH (Count I); violation of the Rehabilitation

7

Act (discrimination on the basis of perceived disability) against Defendant LRH (Count II); violation of the ADA (discrimination on the basis of perceived disability) against Defendant LRH (Count III); violation of 42 U.S.C. § 1983 for deprivation of procedural due process under the Fourteenth Amendment against Defendants PRN and Sorna (Count IV); violation of 42 U.S.C. § 1983 for unreasonable search and seizure under the Fourth Amendment against Defendants PRN and Dr. Sorna (Count V); defamation under Florida law against Defendants PRN and Dr. Sorna (Count VI); tortious interference with business relationship under Florida law against Defendants PRN, BoardPrep, Dr. Sorna, Dr. Robben, and Dr. Sears (Count VII); violation of RICO, 18 U.S.C. § 1962(c), against Defendants PRN and Dr. Sorna (Count VIII); violation of RICO, 18 U.S.C. § 1962(d), against Defendants PRN, BoardPrep, Dr. Sorna, Dr. Robben, and Dr. Sears (Count IX); civil conspiracy under Florida law against Defendants PRN, BoardPrep, Dr. Sorna, Dr. Robben, and Dr. Sears (Count X); and defamation under Florida law against Defendants PRN, BoardPrep, Dr. Sorna, Dr. Robben, and Dr. Sears (Count XI). *Id.* ¶¶ 205–444.

## DISCUSSION

Federal Rule of Civil Procedure 8 requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2),

8

(e).[5] In light of Rule 8, courts in the Middle District of Florida have made it clear that a complaint is an "improper and impermissible place for the tedious and burdensome aggregation of prospective evidence, for the rehearsal of tendentious arguments, or for the protracted recitation and explanation of legal authority putatively supporting the pleader's claim for relief." *Trump v. N.Y. Times Co.*, 800 F. Supp. 3d 1297, 1298 (M.D. Fla. 2025).

These well-established pleading principles are violated by "shotgun" pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). There are four categories of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

---

[5] Although *pro se* litigants should be shown a certain level of leniency, *see GJR Invs. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citation omitted), the Eleventh Circuit recognizes that "once a *pro se* . . . litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). "There is no 'pro se plaintiff' standard. There is only the standard set by the Federal Rules of Civil Procedure, which all litigants—counseled or not—must follow." *Herbozo v. Fernandez*, No. 8:26-cv-436-KKM-TGW, 2026 WL 706678, at *3 (M.D. Fla. Mar. 13, 2026).

*Id.* at 1321–23.

Such pleadings are "flatly forbidden by the spirit, if not the letter, of these rules because they are calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (citation modified) (quoting *Weiland*, 792 F.3d at 1320). Further, shotgun pleadings "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)). "When presented with a shotgun complaint, the district court should order repleading *sua sponte*." *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009) (per curiam) (citing *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006)). The Court does so here.

The Amended Complaint contains 444 numbered paragraphs—some split into multiple subsections, *see, e.g.*, Dkt. 28 ¶ 344 (including one paragraph that spans six pages)—totaling a voluminous 221 pages. *See id.* Over these hundreds of pages, Plaintiff divides his allegations into dozens of separately labeled sections and subsections, which repeatedly cross-reference prior allegations, unattached exhibits, and other portions of the Amended Complaint. *See id.* The result is a pleading so sprawling that discerning the nature of Plaintiff's claims and the factual allegations underlying each requires substantial effort by the Court. *See Herbozo v. Fernandez*,

No. 8:26-cv-436-KKM-TGW, 2026 WL 706678, at *3 (M.D. Fla. Mar. 13, 2026) ("Judges are not like pigs, hunting for truffles buried in briefs." (quoting *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011)). Overall, the Court finds this to be far from the "short and plain statement" required by Rule 8(a)(2).

As to the first category of shotgun pleading concerning the adoption of preceding counts, Plaintiff begins each listed claim with a re-incorporation consisting of a cluttered assembly of paragraphs and factual sections. *See* Dkt. 28. For example, under Count XI for defamation, the Amended Complaint states the following:

> Plaintiff incorporates by reference, as if fully set forth herein, only the following paragraphs of this Complaint: paragraphs 1 through 10 (Nature of Action), paragraphs 11 through 15 ( Jurisdiction and Venue), paragraph 16 (Plaintiff), paragraph 18 (BoardPrep), paragraph 21 (Dr. Robben), paragraph 22 (Dr. Sears), paragraph 322 (Section B of Count VI - Elements of Defamation Under Florida Law), paragraphs 330 and 331 (Section D of Count VI - Factual Basis for Falsity and Defamatory Implication), the sub-items of paragraph 344 labeled (h) through (k) solely to the extent they identify the methodological defects, disregard of exculpatory collateral records, and pathologizing of protected professional concerns relevant to falsity, fault, and privilege defeat in this Count XI, and the factual allegations in Section G (BoardPrep Evaluation Process) of this Complaint.

*Id.* ¶ 403. Similarly convoluted re-incorporations precede each claim. *See id.* ¶¶ 206, 239, 262, 285, 303, 321, 340, 350, 383, 394, 403. Although Plaintiff here does not specifically reallege "the allegations of all preceding counts"—as described in *Weiland*—the Court nonetheless finds that Plaintiff's method of re-incorporation likewise frustrates the purpose of Rule 8, which is "to give the defendants adequate

11

notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

Furthermore, the Amended Complaint is "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Included therein are exhaustive and unnecessary details about the myriad interactions between Plaintiff and both parties and nonparties alike. *See generally* Dkt. 28 ¶¶ 23–204 (covering merely the Statement of Facts). Specifically, Plaintiff repeatedly provides in-depth details regarding the immaterial substance of these interactions. *See id.* ¶¶ 71, 77, 92–107, 119, 122, 131, 141, 155, 181, 183, 195. Additionally, Plaintiff uses 46 paragraphs to describe his employment history with the non-party BayCare and its affiliated entities.[6] *See id.* ¶¶ 23–68.

In light of the foregoing, the Court finds that "[e]ven under the most generous and lenient application of Rule 8, the complaint is decidedly improper and impermissible." *Trump*, 800 F. Supp. 3d at 1298; *see Whispering Pines Mobile Homeowners' Ass'n v. Wallach*, No. 6:19-cv-487-Orl-41EJK, 2020 WL 9455604, at *2, (M.D. Fla. Apr. 7, 2020) ("The Amended Complaint is clearly not a 'short and plain statement of the claim' as it contains over seventy pages and more than two

---

[6] These facts seem more pertinent to the aforementioned ongoing lawsuit in *Lall v. BayCare Health System, Inc.*, No. 8:26-cv-890 (M.D. Fla.).

hundred numbered paragraphs; it is also full of long block quotes from statutes, and long lists that fall under one paragraph number." (citation modified)).

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiff Rajesh Lall's Amended Complaint, Dkt. 28, is **DISMISSED without prejudice**, with leave to amend within **twenty-eight (28)** days. Any second amended complaint must **not exceed fifty pages**, excluding only the caption, the signature, and any attachments. Failure to timely file the same will result in dismissal of this action without further notice.

2. After review of the Amended Complaint, the Court also finds that some of the claims may not be clearly cognizable as currently pleaded. Plaintiff Rajesh Lall is cautioned against frivolous claims, and the Court notes that all claims must be adequately and plausibly alleged to survive the pleadings stage.

3. Plaintiff should further ensure that this action is brought against the correct parties. *See* Dkt. 54 at 2–3 (alleging that the correct party is Lakeland Regional Medical Center, Inc., not Lakeland Regional Health Systems, Inc.).

**DONE AND ORDERED** at Tampa, Florida, on June 19, 2026.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

13