**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RAJESH LALL, M.D.,

Plaintiff,

v. Case No. 8:26-CV-725-WFJ-AEP

PROFESSIONALS RESOURCE NETWORK, INC.; MICHAEL J. SORNA, M.D.; BOARDPREP LLC; DEREK ROBBEN, M.D.; LAKELAND REGIONAL MEDICAL CENTER, INC; TIMOTHY REGAN, M.D.; and LAKELAND REGIONAL HEALTH SYSTEMS, INC.,

Defendants.
_______________________________________/

**MOTION TO DISMISS WITH PREJUDICE**

The Second Amended Complaint ("Complaint" or "Compl.") filed by Rajesh Lall, M.D. ("Dr. Lall") brings ten separate claims against seven different defendants. Three of these claims target Lakeland Regional Medical Center, Inc. ("LRMC"), one targets Lakeland Regional Health Systems, Inc. ("LRH"), and one targets both LRMC and Timothy Regan, M.D. ("Dr. Regan"). The claims against LRMC, LRH, and Dr. Regan (collectively, the "LRH Defendants") fail because the Complaint does not comply with the short and plain statement requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure and does not allege facts adequate to state any claim for relief.

I. The Complaint Does Not Comply with Rule 8(a)(2)

"The standard for notice pleading set forth in Fed. R. Civ. P. 8(a)(2) requires a 'short and plaint statement of the claim showing that the pleader is entitled to relief.'" Osahar v. U.S. Postal Serv., 297 Fed. Appx. 863, 864 (11th Cir. 2008) (quoting In re Southeast Banking Corp., 69 F.3d 1539, 1551 (11th Cir. 1995)). The 62-page complaint in Osahar was "neither short nor plain" and was a "quintessential 'shotgun' pleading replete with factual allegations and rambling legal conclusions." Id. at 864. See also Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291 (11th Cir. 2018); Magluta v. Samples, 256 F.3d 1282, 1284–85 (11th Cir. 2001). "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors . . . ." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).

Each count of Dr. Lall's Complaint incorporates paragraphs from previous counts. Compl. ¶¶ 172, 204, 234, 242, 259, Jul. 30, 2026, ECF No. 66. As this Court noted in dismissing his First Amended Complaint: "Plaintiff's method of reincorporation frustrates the purpose of Rule 8, which is 'to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" Doc. No. 62. (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015). Dr. Lall's Second Amended Complaint should also be dismissed as a shotgun pleading.

II. The Complaint Fails to State a Claim for Relief

The claims against the LRH Defendants may also be dismissed pursuant to Rule 12(b)(6).

A. Standard of Review

While a Rule 12(b)(6) motion must assume the accuracy of a pleading's factual allegations, this does not disadvantage arguments which contend that the facts alleged do not support legal relief:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (cleaned up). This allows a court to disregard conclusory claims of disability, discrimination, retaliation, and the like. If the facts "do not permit the court to infer more than the mere possibility of misconduct" the complaint may be dismissed. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

While pro se pleadings are to be construed liberally, "pro se litigants are nonetheless required to conform their pleadings to procedural rules." Hanna v. Florida, 599 Fed. Appx. 362, 363 (11th Cir. 2015). A district court has no duty to act

as a pro se litigant's lawyer. See U.S. v. Hung Thien Ly, 646 F.3d 1307, 1315 (11th Cir. 2011).

When resolving a motion to dismiss, courts may consider documents and communications referred to in a complaint under the doctrine of incorporation by reference. See Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024) "[A] court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged". Id.

B. Allegations Relevant to the Claims Against the LRH Defendants

On September 19, 2025, Dr. Lall was arrested on felony charges. Compl. at ¶ 152. On September 20, 2025, while in police custody and under a Baker Act hold, Dr. Lall was transported to the LRMC emergency room ("ER") suffering from a fever and dehydration. Id. at ¶ 154. He alleges that Dr. Regan denied him admission to a medical bed and instead offered admission to a psychiatric bed because of the Baker Act hold. Id. at ¶ 156. Dr. Lall refused admission to the psychiatric bed and was discharged to police custody. Id. at ¶ 157. On October 1, 2025, Dr. Lall met with Dr. Regan and Francisco Chebly, M.D. ("Dr. Chebly") to discuss the September 20, 2025 ER visit. Id. at ¶¶ 158–59. Dr. Lall alleges that Dr.

Regan and Dr. Chebly stated that the hospital wished to manage public perceptions due to Dr. Lall's arrest, and advised Dr. Lall that it may be best to avoid visiting any LRH facilities unless he needed medical attention. Id. at ¶¶ 161–62.

By e-mail dated October 2, 2025, Dr. Lall was informed that the hospital had learned of his September 19, 2025 felony arrest and stated that it had not yet taken action under Section 11.E..3(c) of the LRMC Medical Staff Bylaws ("Bylaws"). Id. at ¶ 163. The same e-mail gave Dr. Lall the option to resign from the LRMC medical staff, which would not be reportable to the National Practitioner Data Bank, would not be a derogatory action, and would allow Dr. Lall to reapply to the LRMC medical staff at a future date. Id. at ¶ 164. The same e-mail also advised that, due to issues with the perception of his recent arrest, Dr. Lall should avoid coming to any LRH campuses, though he was welcome to present if he needed medical attention. Id. at ¶¶ 165, 248. By letter dated December 3, 2025, Dr. Lall was informed that "LRH is exercising the automatic relinquishment provision of Section 11.E of the Medical Staff Bylaws" and that his practice privileges were being voluntarily relinquished. Id. at ¶ 168.

C. Dr. Lall Has Not Stated a Claim Against the LRH Defendants

Dr. Lall's five claims against the LRH Defendants should each be dismissed for the reasons set forth in the following pages:

1. Count VI — Breach of Contract

Dr. Lall contends the Bylaws amount to a contract binding the parties and providing a basis for a breach of contract claim. Compl. at ¶ 173. "[T]he three elements of an action for a breach of contract are: '(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach.'" JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co., 292 So. 3d 500, 508 (Fla. 2d DCA 2020) (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)). Assuming the Bylaws constitute an enforceable contract, a breach occurs only if LRH violated the terms of the Bylaws. See University Community Hosp. v. Wilson, 1 So. 3d 206, 212–13 (Fla. 2d DCA 2008) (hospital terminated a physician's clinical privileges without any quality-of-care issue as required by its bylaws); Lawnwood Medical Center v. Sadow, 43 So. 3d 710, 722 (4th DCA 2010).

Dr. Lall has failed to allege facts indicating any action by LRMC in violation of the Bylaws. He states that Bylaws Section 11.E.3(c) allows LRH to automatically relinquish clinical privileges if an individual is arrested for a felony or certain misdemeanor offenses. Compl. at ¶ 163. Bylaws Section 11.E.3(d) provides that

the automatic relinquishment of clinical privileges takes effect upon actual or special notice to the individual. Id. at ¶ 182. On September 19, 2025, Dr. Lall was arrested and charged with felony offenses. Id. at ¶ 152. On December 3, 2025, LRMC transmitted to Dr. Lall written notice that his clinical privileges were voluntarily resigned in accordance with Section 11.E.3 of the Bylaws. Id. at ¶ 168.

Dr. Lall claims that LRMC breached the terms of the Bylaws in three different ways. First, he alleges that LRMC prevented him from exercising his clinical privileges beginning July 11, 2025, without the process required by Section 11.D. Id. at ¶ 200. Dr. Lall alleges that his medical staff membership and clinical privileges were in good standing when LRMC prevented him from exercising his privileges beginning on July 11, 2025. Id. at ¶ 175. However, LRMC did not breach the terms of the Bylaws by suspending Dr. Lall because Bylaws Section 11.D.1.(2)(b) allows LRMC to suspend privileges when an event is reported that causes concern. Dr. Lall alleges that on July 11, 2025, Professional Resources Network, Inc. ("PRN") issued a notice to LRMC that Dr. Lall was refrained from practice. Compl. at ¶¶ 146–48. LRMC then acted in accordance with Bylaws Section 11.D.1.(2)(b) by suspending Dr. Lall's privileges.

Next, Dr. Lall alleges that LRMC breached the terms of the Bylaws by invoking the automatic relinquishment of his privileges under Section 11.E "before the notice and ninety-day period required by Sections 11.E.3(d) and 11.E.3(f)." Id.

at ¶ 201. The Bylaws are attached to this motion as Exhibit A, and Section 11.E.3(d) reads: "Automatic relinquishment shall take effect immediately upon actual or Special Notice to the individual and continue, unless a waiver of the threshold eligibility criteria is granted pursuant to Section 7.A.2, or until the matter is resolved and the individual is granted reinstatement, as may be applicable." Bylaws Section 11.E.3(f) reads: "Failure to resolve any matter that results in an automatic relinquishment within 90 days of the date of relinquishment shall result in an automatic resignation of appointment and clinical privileges." Neither of these provisions support Dr. Lall's theory of breach because neither provision requires that LRMC must wait ninety days before invoking Bylaws Section 11.E.3(c) in response to his arrest. Relinquishment took place pursuant to Section 11.E.3(d) when LRMC gave notice to Dr. Lall on December 3, 2025, that his privileges had been automatically relinquished. Section 11.E.3(f) simply specifies the conditions under which an automatic relinquishment can become an automatic resignation.

Finally, Dr. Lall alleges that LRMC breached the terms of the Bylaws by failing to conduct a reinstatement review under Sections 11.E.3(d) and 11.E.7. Id. at ¶ 202. Section 11.E.3(d) reads: "Automatic relinquishment shall take effect immediately upon actual or Special Notice to the individual and continue, unless a waiver of the threshold eligibility criteria is granted pursuant to Section 7.A.2, or

until the matter is resolved and the individual is granted reinstatement, as may be applicable." This section provides the requirements for notice of relinquishment, and has no bearing on the issue of reinstatement. Section 11.E.7(c) provides a discretionary process for LRMC to determine whether privileges should be reinstated after being automatically relinquished for an arrest. Dr. Lall alleges that his request for reinstatement was not referred to the Chief of Staff, the President/CMO, the Leadership Council, the Credentials Committee, the Executive Committee, or the Board. Compl. at ¶ 198. However, Section 11.E.7(c) does not require LRMC to refer the request for reinstatement to the Credentials Committee, Executive Committee, or the Board, unless reinstatement is approved. The process is discretionary and does not afford Dr. Lall any guarantee of reinstatement.

The allegations of the Complaint do not show any breach of the terms of the Bylaws. Accordingly, Count VI fails to state a claim for breach of contract.

2. Count VII – Rehabilitation Act

"'To establish a prima facie case of discrimination under the [Rehabilitation] Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability.'" Owens v. Governor's Office of Student Achievement,

52 F.4th 1327, 1334 (11th Cir. 2022) (quoting Sutton v. Lader, 185 F.3d 1203, 1207–08 (11th Cir. 1999)). Count VII fails because the Rehabilitation Act does not apply to hospital privileges for non-employee physicians. Even if the Rehabilitation Act did apply to this grievance, Dr. Lall's allegations do not indicate that the sole reason his privileges were lost was because of a disability.

a. Rehabilitation Act Does Not Apply to Dr. Lall

In Wojewski v. Rapid City Regional Hosp., 450 F.3d 338 (8th Cir. 2006), Dr. Wojewski lost his privileges after an acute episode of bipolar disorder while he was performing open-heart surgery. Id. at 341. The Court of Appeals interpreted the Rehabilitation Act as applying, like Title I of the ADA, to employees. But because Dr. Wojewski was not employed by the hospital, he could not seek relief under the Rehabilitation Act. Id. at 344–45. While there is contrary authority,[1] the better interpretation is that the Rehabilitation Act is not applicable to non-employees, such as independent contractors. See also Hiler v. Brown, 177 F.3d 542, 545–47 (6th Cir. 1999) (only employers can be liable under Rehabilitation Act); Tubre v. Clark McCarthy Healthcare Partners, 30 A.D. Cases 1717, 2014 WL

[1] See Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968 (10th Cir. 2002); Fleming v. Yuma Regional Med. Cntr., 587 F.3d 938 (9th Cir. 2009). We find no Eleventh Circuit precedent on the issue. See Adam v. Price, 2017 WL 6460247, n.7 (N.D. Ga. 2017) ("Eleventh Circuit does not appear to have squarely addressed this issue").

6469414 (E.D. La. 2014); Cortes-Rivera v. Department of Correction and Rehabilitation, 617 F.Supp.2d 7, 17–18, 22–23 (D. P.R. 2009); Caitlin Perry, Do Not Depend on the Rehabilitation Act: Why Independent Contractors are Independent of Section 504, 8 Seton H. Cir. Rev. 443 (2012).[2]

Dr. Lall states that "[h]e was not an employee of LRMC." Second Amended Compl. at ¶ 208. Because the Rehabilitation Act does not apply to non-employees, Count VII fails to state a claim.

b. Privileges Not Lost Solely Due to Discrimination

Even if the Rehabilitation Act applies to a non-employee, the Act requires that the person be discriminated against "**solely** by reason of his or her disability." 29 U.S.C. § 794(a) (emphasis added). "As a result, a claim of disability discrimination fails if the employer based the adverse employment action partially on disability and partially on other factors." Mullin v. Secretary, U.S. Dep't of Veterans Affairs, 162 F.4th 1296, 1303 (11th Cir. 2025). For example, despite

[2] Wojewski is also in accord with other cases finding that nonemployee physicians may not seek relief for loss of hospital privileges under other antidiscrimination laws. See Perry v. VHS San Antonio Partners, 995 F.3d 918 (5th Cir. 2021); Henry v. Adventist Health Castle Med. Ctr., 970 F.3d 1126, 1133 (9th Cir. 2020); Shah v. Deaconess Hosp., 355 F.3d 496, 500 (6th Cir. 2004); Vakharia v. Swedish Covenant Hosp., 190 F.3d 799, 806 (7th Cir. 1999); Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 263 (4th Cir. 1997); Alexander v. Rush North Shore Med. Ctr., 101 F.3d 487 (7th Cir. 1996).

evidence that an anesthesiologist was terminated in part because of legal risks arising from his narcolepsy, he had been previously warned that any additional complaints about his performance would constitute grounds for termination. It followed that the decision against renewing his contract was not solely based on his narcolepsy. Sholes v. Anesthesia Dep't., 2024 WL 700438, *5 (11th Cir. 2024).

Dr. Lall has not alleged facts to show that he was discriminated against solely because of alleged disability. To the contrary, he states that LRMC suspended his privileges based "solely on PRN's notice. . . ." Compl. at ¶ 216. PRN's notice is attached to this motion as Exhibit B. The notice contains no mention of a disability. The relevant July 11, 2025 e-mail communication between LRMC and Dr. Lall is attached to this motion as Exhibit C. The communication states that the decision to suspend Dr. Lall's practice at LRMC was "[b]ased on this formal notice from PRN. . . ." Based on Dr. Lall's allegations, the PRN notice, and the communication from LRMC to Dr. Lall, LRMC made its decision to suspend Dr. Lall's practice privileges based on the written notice from PRN that he was "refrained from practice" and not based solely on alleged disability.

Accordingly, Count VIII fails because Dr. Lall was not an employee and because he does not allege facts showing he lost privileges from practice at the LRH Hospital solely because of disability discrimination.

3. Count VIII – Rehabilitation Act

In Count VIII, Dr. Lall complains that, because he had been Baker Acted, he was offered treatment in a psychiatric bed. Compl. ¶¶ 152-57, 228-36. Although disability discrimination against a hospital patient can fall within the scope of the Rehabilitation Act,[3] medical treatment decisions generally cannot form the basis of a claim under the Rehabilitation Act. See Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005). Other circuits have agreed that "a lawsuit under the Rehab[ilitation] Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions." Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005). See also Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005). Accordingly, Dr. Lall cannot base a Rehabilitation Act claim on the medical treatment decision to offer Dr. Lall a psychiatric bed instead of a medical bed. He was not denied access to the equal enjoyment of LRMC's services. On the contrary, LRMC's doctors made a medical treatment decision and Dr. Lall refused the treatment.

[3] As an example, in Liese v. Indian River Cnty. Hosp. Dist., 701 F.3d 334 (11th Cir. 2012), the court found a violation of the Rehabilitation Act where auxiliary aids provided to assist the patient in communication were inadequate to provide an equal opportunity to benefit from the healthcare provider's treatment.

Moreover, the allegations do not indicate that the offer of a psychiatric bed was solely because of disability or perceived disability. As Dr. Lall was, at the time, subject to the Baker Act, there was ample reason to believe that he was a threat to himself or to others. See Fla. Stat. § 394.463(1)(a)(2). LRH's decision to place Dr. Lall in the Behavioral Health treatment facility was appropriate as that is where Baker Act patients are generally treated, and that facility has policies, structures, and trained staff in place to ensure their safety and the safety of others. It follows that the decision was not solely based on disability, and so there can be no claim under the Rehabilitation Act. Mullin, 162 F.4th at 1303.

4. Count IX – Americans with Disabilities Act Title III

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To present a Title III claim, "the plaintiff must establish (1) that the plaintiff is disabled; (2) that the defendant owns, leases, or operates a place of public accommodation; and (3) that the defendant denied the plaintiff — on the basis of the disability — full and equal enjoyment of the premises." Bell v. FTMC, 2018 WL 4565745, at *1 (M.D. Fla. 2018).

Dr. Lall alleges that on October 2, 2025, LRH instructed him to avoid coming to any LRH campus:

> [D]ue to the perceptual issues stemming from the online publication of your recent arrest, it would be best for you to avoid coming to any LRH campus (including Lakeland Regional Health Medical Center, as well as the Pablo campus, among other) as a visitor until this matter is fully resolved. Of course, should you require any emergent medical care, you are always welcome to present to one of our Emergency Departments. Additionally, if you have routine or urgent medical care needs, you are also welcome to present to one of our medical offices for same, as clinically indicated.

The relevant communication -- an October 2, 2025 e-mail to Dr. Lall -- is attached at Exhibit D to this Motion.

This is not fairly read as a trespass warning preventing Dr. Lall from visiting family or friends in the hospital, but more in the nature of nonbinding advice based on the notoriety of Dr. Lall's arrest. The message makes clear that Dr. Lall is not being excluded from receiving any care at LRH campuses. Moreover, the stated reason for advising Dr. Lall not to visit LRH, as indicated on the face of the message, is not any form of disability discrimination, but perceptual concerns given the publicity over Dr. Lall's recent arrest. This message provides no basis for relief under Title III.

5. Count X – Intentional Infliction of Emotional Distress

Under Florida law, a claim for intentional infliction of emotional distress ("IIED") has four elements:

> "(1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe."

Philippeaux v. Miami Apartments Invs., LLC, 2025 WL 275402, at *4 (11th Cir. Jan. 23, 2025) (quoting Glegg v. Van Den Hurk, 379 So.3d 1171, 1174 (Fla. 4th DCA 2024)). The subjective response of the target of an actor's conduct does not control whether IIED occurred; rather, the conduct must be objectively evaluated by the court to determine whether the conduct "is atrocious, and utterly intolerable in a civilized community." Id. at *5.

Dr. Lall's IIED claim fails to allege intentional and reckless conduct so outrageous as to be utterly intolerable in civilized society. He alleges that after becoming ill during his arrest and Baker Act hold, Dr. Regan denied Dr. Lall admission to a medical bed, instead offering him admission to a psychiatric bed because of the Baker Act hold. Compl. at ¶¶ 261–65.

Dr. Lall claims that this offer was made in reckless disregard of the emotional effect of offering a psychiatric bed as opposed to a medical bed. Id. at ¶ 268. However, "'because the outrageousness test is objective,' testimony as to the plaintiff's beliefs on whether the defendant intended to cause emotional distress is 'of no moment.'" Johns Hopkins All Children's Hospital, Inc. v. Kowalski, 425 So.3d 645, 663 (Fla. 2d DCA 2025) (quoting Mellette v. Trinity Mem'l Cemetery, Inc., 95 So.3d 1043, 1049 (Fla. 2d DCA 2012)).

Other than mere recitation of the elements of an IIED claim, Dr. Lall fails to allege how Dr. Regan's offer to treat a Baker Act patient in the Behavioral Health treatment complex could plausibly be considered objectively atrocious and utterly intolerable in a civilized community. Even if Dr. Regan had not properly exercised his medical judgment, "the rendering of substandard medical care does not constitute the intentional infliction of emotional distress." Gonzalez-Gonzalez-Jimenez de Ruiz v. U.S., 231 F.Supp.2d 1187, 1200 (M.D. Fla. 2002). Dr. Lall's allegations show that he presented to LRMC's emergency room, was offered a psychiatric bed because of the Baker Act hold, and refused the care LRMC offered.

III. Dismissal Should Be With Prejudice

Leave to amend is liberally granted under Rule 15. But that leniency is limited to one chance to repair a pleading's defects. See Eiber Radiology, v. Toshiba Am. Med. Syss., 673 Fed.Appx. 925, 930 (11th Cir. 2016). Dr. Lall is now

on his third attempt to state a pleading, and for the reasons reviewed herein is still unable to allege facts which indicate he has any claim for relief against the LRH Defendants. As no adequate claim has been stated after three tries, LRH asks that the Second Amended Complaint and this cause now be dismissed with prejudice as to the LRH Defendants. See also Jones v. Chronister, 2026 WL 84001 (M.D. Fla. Jan. 12, 2026).

IV. There Is No Jurisdiction Over State Claims

The parties are not diverse, and so federal jurisdiction over this case depends upon the validity of the federal claims. Jurisdiction over Dr. Lall's state law claims for breach of contract and intentional infliction of emotional distress are therefore dependent on his federal claims. See 28 U.S.C. § 1367(a). Under Section 1367(c)(4) where all federal claims are dismissed, the court should exercise its discretion to dismiss any state claims:

> "We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Ramey v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). The Supreme Court has also put a thumb on the scale: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise [pendent] jurisdiction …." *Carnegie-Mellon Univ. V. Cahill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). A district court, exercising its already broad discretion, will rarely err by declining supplemental jurisdiction after the federal claims that supported its jurisdiction are dismissed.

Silas v. Sheriff of Broward Cnty., 55 F.4th 863, 866 (11th Cir. 2022). Accordingly, upon dismissal of Dr. Lall's federal claims against the LRH Defendants, his claims under state law for breach of contract and intentional infliction of emotional distress should also be dismissed pursuant to Section 1367(c)(4).

IV. Conclusion

As with his prior pleading attempts, Dr. Lall's claims against the LRH Defendants still fail to comply with Rule 8(a)(2), and still fail to state a claim for relief under Rule 12(b)(6). And there is no basis for federal jurisdiction over his state law claims if the federal claims against LRMC and LRH are dismissed. Accordingly, the claims against LRMC, LRH, and Dr. Regan should be dismissed. And given that this is his third unsuccessful attempt to state a claim, this dismissal may be with prejudice.

**Local Rule 3.01(g) Certification**

Undersigned counsel certifies that he has conferred with the other Defendants and Plaintiff by email on August 8, 9, 10 and 11. Counsel for PRN, Michael Sorna, M.D., BoardPrep, LLC, Derek Robben, M.D., and Nichole Koford, do not object to dismissal with prejudice. Dr. Lall does object.

Respectfully submitted,

**PETERSON & MYERS, P.A.**

*/s/ Stephen Senn*
**STEPHEN R. SENN**
Florida Bar No. 0833878
225 East Lemon Street, Suite 300
Post Office Box 24628
Lakeland, Florida 33801
Telephone: 863-683-6511
Facsimile: 863-884-1629
srsservice@petersonmyers.com
ssenn@petersonmyers.com
*Counsel for Defendant LRH*

## CERTIFICATE OF SERVICE

**I CERTIFY** that on August 11, 2026, I electronically filed the foregoing using the Court's CM / ECF system which will provide service to all counsel of record. Service was made by email to the following:

Plaintiff Rajesh Lall, M.D.
5005 S. Florida Avenue, Suite 200
Lakeland, FL 33813
rplall@navjay.com

*/s/ Stephen Senn*
STEPHEN R. SENN